**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 22, 2009, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: January 22, 2009**



_____
Arthur I. Harris
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 08-14447 |
| | ) | |
| WILLIAM HARRIES, SR., and, | ) | Chapter. 7 |
| SARAH L. HARRIES, | ) | |
| | ) | Judge Arthur I. Harris |
| Debtors. | | |

MEMORANDUM OF OPINION[1]

Before the Court is the United States Trustee's motion to dismiss. In lieu of an evidentiary hearing, the parties jointly requested that the motion be resolved on the parties' stipulations and briefs. The parties filed Joint Stipulations of Fact on October 17, 2008 (Docket #27); and, in a conference call with the Court, counsel further stipulated to the admission of the debtors' Chapter 7 petition, schedules, and statements. At issue is whether, pursuant to 11 U.S.C. § 707(b)(3)(B), considering the totality of the circumstances of the debtors' financial condition, the

_____
[1] This opinion is not intended for official publication.

granting of relief would be an abuse of the provisions of Chapter 7. For the reasons that follow, the debtors shall have until February 12, 2009, to file a motion to convert this case to a case under Chapter 11 or Chapter 13. Absent the timely filing of a motion to convert, the Court will issue a separate order on or after February 13, 2009, granting the United States Trustee's motion to dismiss this case pursuant to 11 U.S.C. § 707(b).

## JURISDICTION

A motion to dismiss a bankruptcy case is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## STIPULATED FACTS

The debtors filed their Chapter 7 petition on June 12, 2008. The debtors' schedules show $280,125.00 in assets and $352,149.00 in debt. Of that debt, $307,336.00 is secured debt, and $44,813.00 is general unsecured debt. $301,000.00 of the debt is secured by the debtors' current and former residences and car. $5,100.00 of the debt consists of a number of purchase money security interests in various household furniture, electronics, and appliances. $1,236.00 of the debt is a judgment lien held by Southwest General Health Center. The

2

remaining $44,813.00 is credit card debt. These debts were incurred primarily for personal, family, or household purposes. Accordingly, the Court finds that the debtors' debts are primarily consumer debts. *See* 11 U.S.C. § 101(8).

The bulk of the debtors' secured debt is owed in connection with their current and former residences. The debtors purchased their former residence in Parma in 2002 for approximately $105,000. They put about $20,000 down and financed the balance. The debtors value the Parma property at $80,000, with a mortgage debt of about $103,000. The debtors' last monthly payment on the Parma property was January 1, 2008. The debtors are surrendering the Parma property. The debtors purchased their current residence in Olmsted Falls in August 2007 for approximately $178,000. They put zero down and financed the entire purchase price. The debtors value the Olmsted Falls home at $180,000, with a mortgage debt of about $178,000 and a mortgage payment of $1,700 per month. The debtors' current mortgage payment on their Olmsted Falls residence is higher than the applicable Local Housing and Utility Standard in Cuyahoga County, Ohio, for a family of four of $1,047.[2] The debtors are reaffirming the mortgage on the

---

[2] This equals the total of the mortgage/rent component ($1,047) of the Local Housing and Utility Standards posted as of January 5, 2009, at the U.S. Trustee website *http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/housing_charts/ irs _housing_charts_ OH.htm* for residents of Cuyahoga County, Ohio, with a family size of four, who filed cases between March 17, 2008, and September 30, 2008.

3

08-14447-aih    Doc 33    FILED 01/22/09    ENTERED 01/22/09 14:35:33    Page 3 of 14

Olmsted Falls property.

The debtors' Schedules I and J show $5,720.00 of combined average monthly income and $5,821.00 of average monthly expenses, with a monthly net income of -($101.00). The debtors' monthly expenses include a $10 payment to Dell, a $42 payment to hhgregg, a $34 payment to Levin Furniture, and a $50 payment on a judgment lien. Mrs. Harries's payroll deductions include a contribution of approximately $180 per month to a 401K plan and $60 monthly payments for a 401K loan. The debtors have two dependent children ages seven and three.

## CONCLUSIONS OF LAW

The United States Trustee has moved to dismiss the debtors' case for abuse under 11 U.S.C. § 707(b)(3)(B). That provision permits a bankruptcy court to dismiss an individual debtor's case if the debtor's debts are primarily consumer debts and if, considering the "totality of the circumstances of the debtor's financial condition," the granting of relief would be an abuse of the provisions of Chapter 7. The burden of proof rests on the United States Trustee to demonstrate abuse by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279 (1991) (preponderance-of-the-evidence standard presumed to be applicable in civil actions between private parties).

4

Subsection 707(b) was substantially revised by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Under former subsection 707(b), the standard for dismissal was "substantial abuse." While the Bankruptcy Code did not define "substantial abuse," the Sixth Circuit had held that "in seeking to curb 'substantial abuse,' Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor." *In re Behlke*, 358 F.3d 429, 434 (6th Cir. 2004) (quoting *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989)). Whether granting Chapter 7 relief was a "substantial abuse" was determined from the totality of the circumstances, and a court could find substantial abuse based on either lack of honesty or want of need. *See Behlke*, 358 F.3d at 434.

New subparagraph 707(b)(3)(B) closely tracks the Sixth Circuit's prior precedents by directing the bankruptcy court to consider the "totality of the circumstances of the debtor's financial condition." This suggests that *Krohn* and *Behlke* are still good law, at least to the extent that facts constituting "substantial abuse" under *Krohn* and *Behlke* based on a debtor's "want of need" would also constitute "abuse" under the "totality of the circumstances" of 11 U.S.C. § 707(b)(3)(B). *See In re Violanti*, 397 B.R. 852 (Bankr. N.D. Ohio 2008) (noting that the grounds for dismissal under section 707(b)(3) are a codification of pre-BAPCPA case law); *In re Mestemaker*, 359 B.R. 849 (Bankr. N.D. Ohio 2007)

5

(applying *Krohn* and *Behlke* to § 707(b)(3)(B)); *In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006) (noting that pre-BAPCPA cases, including *Krohn*, are still good law).

Therefore, in analyzing the "totality of the circumstances of the debtor[s'] financial condition" to determine whether "abuse" exists under 11 U.S.C. § 707(b)(3)(B), the Court will consider the same factors that the Sixth Circuit established in *Krohn* and *Behlke* for analyzing the "totality of the circumstances" to determine whether "substantial abuse" existed under former subsection 707(b). These factors include: the debtor's "ability to repay his debts out of future earnings," "whether the debtor enjoys a stable source of future income," "whether [the debtor] is eligible for adjustment of his debts through Chapter 13," "whether there are state remedies with the potential to ease [the debtor's] financial predicament," "the degree of relief obtainable through private negotiations," "whether [the debtor's] expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities," and "whether debtor's financial situation is the result of an unforeseen catastrophic event." *Behlke*, 358 F.3d at 434, 437 (citing *Krohn*, 886 F.2d at 126-28).

One important factor the courts look at is whether the debtor would have sufficient disposable income to fund a Chapter 13 plan. *See Behlke*, 358 F.3d

at 435. This Court is unclear how it should determine an above-median income debtor's "projected disposable income" under 11 U.S.C. § 1325(b). *Compare Maney v. Kagenveama* (*In re Kagenveama*), 541 F.3d 868 (9th Cir. 2008) (an opinion authored by Senior Sixth Circuit Judge E. Siler, Jr., which rejected the argument that the term "projected disposable income" connotes a forward-looking concept that only uses the "disposable income" calculation as a starting point), and *In re Kolb*, 366 B.R. 802 (Bankr. S.D. Ohio 2007) (same), *with In re Petro*, 395 B.R. 369 (6th Cir. BAP 2008) (adopting forward-looking approach and declining to follow *Kagenveama* and similar case law to the contrary). In an oral ruling prior to the Sixth Circuit BAP's decision in *In re Petro*, this Court indicated that it would follow the line of authority represented by *Kagenveama*. *See* Order (June 24, 2008) in *In re Dobrski*, N.D. Ohio Bankr. Case No. 07-19825. And, in another oral ruling prior to *In re Petro*, this Court indicated that even if a mechanical application of "projected disposable income" using the means test indicated that a debtor's plan met the requirements of section 1325(b), a debtor's plan would still have to meet the separate "good faith" requirement under section 1325(a)(3) and applicable Sixth Circuit case law such as *In re Barrett*, 964 F.2d 588, 592 (6th Cir. 1992) (adopting "totality of circumstances" test for good faith under 1325(a)(3)). *See* Transcript of June 5, 2008, oral ruling

7

(Docket #62) in *In re Ford*, N.D. Ohio Bankr. Case No. 07-19272 (holding that debtor's zero percent plan did not meet good faith requirement of 1325(a)(3)) (appeal pending BAP Case No. 08-8061). In any event, this Court need not decide between competing lines of case law to resolve the current motion. Under either approach, the Court believes that the debtors would be able to make a significant payment to unsecured creditors over the next five years.

In addition, while the threshold for "abuse" under amended subsection 707(b) may now be lower than the threshold for "substantial abuse" under former subsection 707(b), it is safe to presume that financial circumstances establishing "substantial abuse" under former subsection 707(b), would naturally and necessarily establish "abuse" under amended subsection 707(b). Since this Court finds by a preponderance of the evidence that the United States Trustee has established circumstances that would surpass even the higher threshold for "substantial abuse" under former subsection 707(b), the Court need not determine by how much the threshold has been lowered as a result of BAPCPA.

It should also be noted that the standard under subsection 707(b) is whether "the granting of relief would be an abuse of this chapter" – *i.e.*, Chapter 7. That a debtor may legitimately benefit from or even need relief under Chapter 11 or Chapter 13 has nothing to do with whether "the granting of relief would be an

8

abuse of [Chapter 7]" under subsection 707(b). For example, a debtor who is burdened with substantial consumer debts but enjoys substantial regular income may legitimately need and obtain relief under Chapter 13. Nevertheless, the same debtor's ability to pay even just a portion of unsecured debt from the debtor's substantial future earnings over the next five years may well create a situation of abuse, should the debtor instead seek voluntary relief under Chapter 7.

A. *The Debtors' Ability to Repay their Debts out of Future Earnings*

In analyzing "totality of the circumstances . . . of the debtor[s'] financial situation" under 11 U.S.C. § 707(b)(3)(B), a major factor is the debtors' ability to repay a significant portion of their debts out of future earnings. One way the courts determine a debtor's ability to repay is to calculate whether the debtor would have sufficient income to fund a Chapter 13 plan. *See Behlke*, 358 F.3d at 435. Here, the parties have stipulated that Mrs. Harries's monthly payroll deductions include a contribution of approximately $180 to a 401K plan. The Sixth Circuit has held that 401K contributions may properly be considered as disposable income for purposes of determining the debtor's ability to fund a Chapter 13 plan. *See Behlke,* 358 F.3d at 436. After including the 401K contribution in Mrs. Harries's income calculation, the debtors' combined average monthly income from Schedule I exceeds their average monthly expenses from

9

Schedule J by $79, making at least $79 potentially available to pay general unsecured creditors in a Chapter 13 plan. Creditors might further benefit to the extent that Mrs. Harries pays off her 401K loan before the completion of a Chapter 13 plan. *See Eisen v. Thompson*, 370 B.R. 762, 771, 774 (N.D. Ohio 2007) (additional funds may be available to partially repay creditors in Chapter 13 case once 401K loan is paid off).

In addition, the debtors could significantly reduce their expenses to fund a Chapter 13 plan by eliminating or cramming down various secured debts. The debtors' Schedule D lists a $20,000 debt to Citizens Auto Financial secured by a 2005 Kia Sedona with a value of $12,000. Schedule J lists the payment on the debt as $510 per month. Schedule D shows that this debt was incurred sometime in 2005. Absent a more precise date in the record, the Court finds it more probable than not that the debtors incurred this debt prior to December 15, 2005, and thus more than 910 days prior to the filing of the debtors' bankruptcy petition. Therefore, pursuant to 11 U.S.C. § 506 and the hanging paragraph found in 11 U.S.C. § 1325, the debtors are permitted to cram down this secured debt in a Chapter 13 plan. *See generally Shaw v. Aurgroup Fin. Credit Union*, __ F.3d __, 2009 WL 48214 (6th Cir. Jan. 9, 2009) (discussing requirements of section 1325).

10

Based on a generous application of the "prime-plus" approach[3] set forth in *In re Till*, 541 U.S. 465, 479 (2004), a six percent interest rate would decrease the debtors' monthly car payment to approximately $232 per month over a sixty month payment period. This would allow an additional $278 per month to be paid to general unsecured creditors.

The debtors' Schedule D also includes a judgment lien held by Southwest General Health Center in the amount of $1,236. This judgment lien is secured in fact only to the extent equity exists in the debtors' real property after taking into account the debtors' homestead exemption. According to the debtors' schedules, no such equity exists, so the lien may be avoided, leaving the creditor with only a general unsecured claim. This would allow an additional $50 per month to be paid to general unsecured creditors.

As set forth above, with the elimination of Mrs. Harries's voluntary 401K contribution and various reductions in the debtors' expenses, the debtors have ample income to make a significant payment to unsecured creditors over the next five years. The Court concludes that the debtors could fund a Chapter 13 plan that pays general unsecured creditors at least $182.50 per month for 60 months, the

---

[3] The prime rate as of January 15, 2009, was 3.25%. *See* http://www.federalreserve.gov/releases/h15/update/. The debtors' monthly payments have been calculated using a car value of $12,000, at 6% interest, over a 60-month repayment period.

11

threshold for determining abuse under 11 U.S.C. § 707(b)(2).

B. *Whether the Debtors Enjoy a Stable Source of Future Income*

Another factor used to analyze the totality of the circumstances of a debtor's financial condition is whether the debtor enjoys a stable source of future income. Here, current evidence indicates that the debtors should enjoy a stable source of income over the next five years. While no one can guarantee that the debtors will enjoy stable income for the foreseeable future, Mrs. Harries has been employed at Sirva Inc. for almost six years, and Mr. Harries has been employed at Stack Container Service for almost two years. The debtors' Schedule I indicates that the debtors have gross wages of over $8,000 per month, or about $100,000 per year. This figure is well-above $70,532[4] – the median family income in Ohio for a family of four, a figure used for purposes of 11 U.S.C. § 707(b)(2) and Form B22A. There is no evidence that would lead the Court to conclude that the debtors' current income will likely change for the worse in the foreseeable future.

Should the debtors' financial circumstances take a significant turn for the worse at some point in the future, relief under Chapter 7 may well be appropriate at that time. Similarly, should the debtors elect to convert their current case to a case

---

[4] This is the median income figure posted as of January 5, 2009, at the U.S. Trustee website *http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/median_ income_table.htm* for Ohio residents with a family size of four, who filed cases between March 17, 2008, and September 30, 2008.

12

under Chapter 13, and should their circumstances change at some point in the future, the debtors would have additional options at that time. Such options might include: reconversion to Chapter 7 and a discharge under section 727, a hardship discharge under section 1328, or modification of their Chapter 13 plan under section 1329.

C. *Whether the Debtors are Eligible for Adjustment of their Debts through Chapter 13 and Other Factors*

While the precise amount that the debtors would be able to pay in a Chapter 13 case is uncertain, the debtors are certainly eligible for adjustment of their debts through Chapter 13. And, as previously explained, the Court concludes that the debtors could fund a Chapter 13 plan that pays general unsecured creditors at least $182.50 per month for 60 months, the threshold for determining abuse under 11 U.S.C. § 707(b)(2), "without depriving the debtors of adequate food, clothing, shelter, and other necessities." *Behlke*, 358 F.3d at 434.

The debtors have ample income to make a significant payment to unsecured creditors over the next five years without giving up their current residence and without considering any reduction in expenses, other than the savings from the cram down and other provisions available to Chapter 13 debtors and the elimination of a voluntary 401K contribution. Further, the debtors can expect to continue to earn considerably more than the median income in Ohio. Their

13

financial condition is not primarily the result of unforeseen circumstances. Nor are there any other factors in the record which would cause the Court to alter its conclusion that, under the totality of the circumstances, the granting of relief would be an abuse of the provisions of Chapter 7.

## CONCLUSION

For the foregoing reasons, the debtors shall have until February 12, 2009, to file a motion to convert this case to a case under Chapter 11 or Chapter 13. Absent the timely filing of a motion to convert, the Court will issue a separate order on or after February 13, 2009, granting the United States Trustee's motion to dismiss this case pursuant to 11 U.S.C. § 707(b).

IT IS SO ORDERED.